**UNITED STATES of America, Appellee,**

*v.*

**Jeffrey P. SANTOPIETRO, Thomas E. Porzio, Defendants,**

**Paul R. Vitarelli, Joseph J. Santopietro, Robert A. Giacomi, Fred L. Giusti, Jack R. Giacomi, and Perry A. Pisciotti, Defendants–Appellants.**

Nos. 1333, 1489, 1334, 1326, 2335 and 1490, Dockets 92–1334, 92–1349, 92–1356, 92–1357, 92–1380 and 92–1381.

United States Court of Appeals, Second Circuit.

Argued April 19, 1993.

Decided June 9, 1993.

**18**

Judd Burstein, New York City (Gerald L. Shargel, New York City, of Counsel), for defendants-appellants Pisciotti & Santopietro.

Patrick Tomasiewicz, West Hartford, CT (Fazzano & Tomasiewicz, of Counsel), for defendant-appellant Vitarelli.

David A. Moraghan, Torrington, CT, for defendant-appellant Jack R. Giacomi.

Richard S. Cramer, Wethersfield, CT, for defendant-appellant Robert A. Giacomi.

Jules Sach, New York City, for defendant-appellant Giusti.

Holly B. Fitzsimmons, Asst. U.S. Atty., D.Conn. (Albert S. Dabrowski, U.S. Atty., Amy B. Lederer, Asst. U.S. Atty., of Counsel), for appellee.

Before: PRATT and JACOBS, Circuit Judges, and WHITMAN KNAPP, Senior District Judge for the United States District Court for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

## FACTS AND BACKGROUND

Joseph J. Santopietro became the mayor of Waterbury, Connecticut, in November 1985. His victory was due in part to a feud between factions of the city's Democratic party, which had been in power for the previous ten years. The Republicans' uncertainty that they would be able to retain the power they had won fueled a "get it while we can" mentality among Santopietro and his close associates. Perry Pisciotti, a former GOP town chairman who was close to Santopietro's family, arranged for Santopietro to use his political position to influence decisions by various city agencies in return for bank loans and cash payoffs from certain local businessmen. Santopietro was reelected twice, and the conspiracy expanded in 1988 to include other Waterbury politicians.

Benefits to certain bankers and land developers included zoning changes, subdivision approvals, confidential appraisal information for use in bidding on city-owned property, expedited treatment from city agencies, and input into appointments. In return, Santopietro and other members of his administration received hundreds of thousands of dollars disguised as loans, sales of options, real estate contract cancellations, and property leases.

Following a five-week trial before T.F. Gilroy Daly, *Judge,* in the United States District Court for the District of Connecticut, a jury found seven defendants guilty of conspiracy, bribery, and various counts of bank fraud, embezzlement, and tax evasion. Six of them have appealed.

Santopietro was convicted of bribery conspiracies, *see* 18 U.S.C. § 371; receiving corrupt payments, *see* 18 U.S.C. § 666(a)(1)(B); bank fraud, *see* 18 U.S.C. § 1344; embezzlement of federal grant monies, *see* 18 U.S.C. § 665(a); and tax evasion, *see* 26 U.S.C. § 7201. He was sentenced to 108 months'

imprisonment, three years' supervised release, a $25,000 fine, and a $900 special assessment.

Pisciotti was convicted of conspiracy, *see* 18 U.S.C. § 371; bribery, *see* 18 U.S.C. § 666(a)(2); and bank fraud, *see* 18 U.S.C. § 1344. He was sentenced to 114 months' imprisonment, three years' supervised release, a $25,000 fine, and a $250 special assessment.

Paul Vitarelli, former president of Waterbury's Board of Aldermen, was convicted of conspiracy, *see* 18 U.S.C. § 371; receiving corrupt payments, *see* 18 U.S.C. § 666(a)(1)(B); and filing a false statement on his tax return, *see* 26 U.S.C. § 7206(1). He was sentenced to forty-one months' imprisonment, three years' supervised release, and a $150 special assessment.

Robert Giacomi, former majority leader of Waterbury's Board of Aldermen, was convicted of conspiracy, *see* 18 U.S.C. § 371; receiving corrupt payments, *see* 18 U.S.C. § 666(a)(1)(B); and filing a false statement on his tax return, *see* 26 U.S.C. § 7206(1). He was sentenced to fifty-one months' imprisonment, three years' supervised release, a $7500 fine, and a $150 special assessment.

Jack Giacomi, Waterbury's labor negotiator and brother of Robert Giacomi, was convicted of conspiracy, *see* 18 U.S.C. § 371; receiving corrupt payments, *see* 18 U.S.C. § 666(a)(1)(B); and filing a false statement on his tax return, *see* 26 U.S.C. § 7206(1). He was sentenced to eighteen months' imprisonment, three years' supervised release, a $4000 fine, and a $150 special assessment.

Fred Giusti, former majority leader of Waterbury's Board of Aldermen, was convicted of conspiracy, *see* 18 U.S.C. § 371; and receiving corrupt payments, *see* 18 U.S.C. § 666(a)(1)(B). He was sentenced to thirty-three months' imprisonment, three years' supervised release, and a $100 special assessment.

The defendants raise numerous issues on appeal, challenging various aspects of their trial and sentences. We have carefully considered all of the challenges to their convictions and concluded that none of them has any merit. We would affirm all of the judgments by summary order but for the existence of two sentencing issues that deserve brief comment: first, the imposition of a special skills enhancement to Robert Giacomi's sentence pursuant to U.S.S.G. § 3B1.3; second, the sentencing of Fred Giusti, who claims he received a "reward" rather than a "bribe", pursuant to U.S.S.G. § 2C1.1. For the reasons set forth below, we affirm all of the judgments except that with respect to Robert Giacomi we affirm the conviction but remand for resentencing.

## DISCUSSION

A. *Application of a Special Skills Enhancement to Robert Giacomi.*

Robert Giacomi is a certified public accountant. The probation department's presentence report did not recommend any adjustments that would reflect this fact. The government, however, objected to this omission and argued that Robert Giacomi had used his special accounting skills to prepare false tax returns for himself, Santopietro, and Jack Giacomi. The government urged the court to impose a two-level adjustment under § 3B1.3, "Abuse of Position of Trust or Use of Special Skill," which it did, increasing Giacomi's offense level from 20 to 22.

The § 3B1.3 enhancement was applied to Giacomi's sentence for the substantive bribery conviction, not to his sentence for filing a false tax return. His sentence for the bribery conviction was determined under § 2C1.1—"Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right." Application note 3 to § 2C1.1 provides: "Do not apply § 3B1.3 * * * except where the offense level is determined under § 2C1.1(c)(1), (2), or (3). In such cases, an adjustment from § 3B1.3 * * * may apply."

Application note 3 is part of the commentary that explains and interprets how the guideline is to be applied and, as such, is binding on the courts. *Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (commentary that interprets or explains guideline is authoritative); *see also* U.S.S.G. § 1B1.7 ("Failure to follow such commentary could constitute an incor-

rect application of the guidelines, subjecting the sentence to possible reversal on appeal."). Since the application note expressly prohibits the imposition of a § 3B1.3 enhancement to a sentence under § 2C1.1 unless the offense level is determined under one of the enumerated exceptions, and since Robert Giacomi's offense level was not determined under any of the exceptions, the sentencing court erred in applying the § 3B1.3 enhancement. Therefore, we must vacate the sentence and remand for resentencing.

We note in passing that in pronouncing Robert Giacomi's sentence orally, Judge Daly mentioned only one sentence, without differentiating between the three counts of conviction. This practice is consistent with the sentencing guidelines, which direct the court to determine an adjusted combined offense level applicable to all counts and impose one sentence as the total punishment. *See* U.S.S.G. § 3D1.1 ("Procedure for Determining Offense Level on Multiple Counts"); U.S.S.G. § 3D1.5 ("Determining the Total Punishment"); U.S.S.G. § 5G1.2 ("Sentencing on Multiple Counts of Conviction"). However, where the maximum allowable sentence on one of the component counts is less than the guideline sentence imposed, the statutory maximum is the guideline sentence for that count of conviction. U.S.S.G. § 5G1.2(b) (incorporating by reference § 5G1.1(a)). Following these directions, Judge Daly, in preparing the written judgment and commitment order for Giacomi, indicated fifty-one months, the result of his guideline calculation, as the sentence on counts one and two, and thirty-six months, the statutory maximum, for Giacomi's third count of conviction, filing a false tax return. *See* 26 U.S.C. § 7206(1). While it would have been better, given the effect of a statutory maximum on one of the counts, to refer specifically to each count at the sentencing hearing, we would not require a resentencing merely because the court failed to do so. In this case, however, since we are already remanding for resentencing because of the application of the § 3B1.3 enhancement, Judge Daly can avoid any further problems by specifying at the resentencing proceeding the specific jail term being imposed on each count.

## B. *Failure to Differentiate Between a Bribe and a Reward.*

▮ Fred Giusti argues that there is a "hole" in the sentencing guidelines because he was convicted of receiving a "reward" under 18 U.S.C. § 666(a)(1)(B), but the applicable guideline, U.S.S.G. § 2C1.1, covers only "bribes". He claims that the trial court erred by failing to determine whether he received a bribe or a reward and sentence him accordingly. In response, the government argues that Giusti's characterization of the payments to him as "rewards" is incorrect, that any corrupt payment received in violation of 18 U.S.C. § 666 is a "bribe", and that the applicable guideline for § 666 offenses was correctly determined by the district court to be § 2C1.1.

Giusti argues that he was convicted for receiving a reward for past actions, not for receiving a bribe. While 18 U.S.C. § 666 is entitled "Theft or bribery concerning programs receiving Federal funds", the statute itself criminalizes "corruptly * * * accept[ing] * * * anything of value * * * intending to be influenced or rewarded * * * in connection with any * * * transaction" of a local government official. 18 U.S.C. § 666(a)(1)(B). The indictment and the jury charge both tracked the language of the statute, including the language "intending to be influenced or rewarded", without differentiating between being "influenced" and being "rewarded". Giusti does not dispute the validity of the indictment or of the jury charge.

For all practical purposes, the difference between influencing and rewarding official action is one of timing. To influence, the payment is made before the official action; to reward, the payment is made afterwards. The evidence at trial revealed that Giusti was a member of Waterbury's Board of Aldermen from January 1, 1986, to February 9, 1989, and that he received corrupt payments from July 5, 1988, to October 5, 1988. Since the time during which he received corrupt payments fell within his term in office, it is not clear that he received the payments only as a reward for past actions. Indeed, on this record a factfinder could reasonably infer

that the payments were bribes, or rewards, or both. Therefore, on a factual level the evidence does not compel Giusti's assertion that he was the recipient of rewards rather than bribes.

Even if the payments Giusti received were in fact rewards made for past actions rather than bribes to influence future actions, he was correctly sentenced under § 2C1.1, entitled "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right". Giusti argues that § 2C1.1 covers only bribes, because it does not refer to rewards or gratuities and that § 2C1.2, entitled "Offering, Giving, Soliciting, or Receiving a Gratuity", should apply to him. The statutory index of the sentencing guidelines, which specifies which guideline applies to which crime, lists both § 2C1.1 and § 2C1.2 as applicable guidelines for 18 U.S.C. § 666(a)(1)(B) offenses. However, guideline § 2C1.2, which covers gratuities, does not include a corrupt purpose as an element of the offense. *See* U.S.S.G. § 2C1.2, comment. (background). Since a corrupt purpose was an essential element of Giusti's conviction under 18 U.S.C. § 666, *cf. United States v. Crozier*, 987 F.2d 893 (2d Cir.1993) (rejecting claim that former § 666(c) was bribery-only statute; court's failure to distinguish between bribe and gratuity inconsequential since it clearly instructed jury on mens rea), sentencing pursuant to § 2C1.2 would be inappropriate, leaving § 2C1.1 as the only applicable guideline.

Section 2C1.1's failure to refer to "rewards" does not mean there is a "hole" in the guidelines. Not every criminal statute has a guideline that mirrors its language; the statutory index simply "specifies the guidelines section * * * ordinarily applicable to the statute of conviction." U.S.S.G.App. A, intro. The first circuit recently confronted a similar issue in *United States v. Mariano*, 983 F.2d 1150, 1158–60 (1st Cir.1993). There, the defendants claimed that they had given a gratuity, rather than a bribe, to a municipal official in violation of 18 U.S.C. § 666(a)(2), and should be sentenced under the gratuity guideline, § 2C1.2. The district court rejected their argument and sentenced them under the bribery guideline, § 2C1.1. The first circuit upheld the district court's choice of

guideline, because the offenses to which the defendants pled guilty "involved corrupt intent"; therefore, "the determination that their actions were more akin to bribe-giving than to gift-giving was not clearly erroneous." *Mariano*, 983 F.2d at 1159.

Giusti argues not that he was improperly convicted under 18 U.S.C. § 666, only that he was improperly sentenced. Because the jury's verdict establishes that Giusti had a corrupt intent, his actions are more akin to bribe-receiving than to gift-receiving. As we view it, the crucial factor in this case is the corrupt purpose, not the timing of the payment. Therefore, sentencing Giusti under the bribery guideline was not clearly erroneous.

### CONCLUSION

Because the district court improperly applied a two-level enhancement under § 3B1.3 to Robert Giacomi, we vacate his sentence and remand for resentencing; his conviction, however, is affirmed. The judgments against Santopietro, Pisciotti, Vitarelli, Jack Giacomi, and Giusti are affirmed.